UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 0:10-CV-085-HRW

RAUL DIAZ-GARCIA,                                                    PLAINTIFF

VS:              **MEMORANDUM OPINION AND ORDER**

J.C. HOLLAND, Warden,                                               DEFENDANT

**       **       **       **       **

Raul Diaz-Garcia, an inmate at the Federal Correctional Institution, in Ashland, Kentucky ("FCI-Ashland"), filed this action under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), against J. C. Holland, Warden at FCI-Ashland, asserting that Warden Holland has been deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights. Plaintiff seeks injunctive relief and his costs. Specifically, Plaintiff requests to be evaluated by an ophthalmologist to diagnose and treat the visual problems which he believes resulted from being hit in the head by a soccer ball in September of 2008.

This matter is before the Court on the Defendant's Motion for Summary Judgment [R. 10]. For the reasons explained below, this motion will be granted, and this case will be dismissed.

## FACTUAL BACKGROUND

Plaintiff states that while he was playing soccer at FCI-Ashland in September 2008, a soccer ball kicked by a player on the opposing soccer team struck him in the head with such force that he was rendered unconscious temporarily. Plaintiff claims that upon regaining consciousness, he was disoriented, his vision was blurred, and he was unable to stand or walk for a while afterwards.

On December 22, 2008, plaintiff submitted an Inmate Sick Call Sign-Up Sheet, complaining of blurred vision and that "I am seeing only black spots out of one eye." See Exhibit 1 to Complaint [Doc. #2-1, p. 2]. Plaintiff stated that he had had this medical condition for about one month.

Apparently, before plaintiff was actually seen or examined by a medical doctor, on January 2, 2009, ten days after submitting his Inmate Sick Call Sign-Up Sheet, plaintiff then submitted an Informal Resolution Attempt form to officials at FCI-Ashland, reiterating his medical problems and requesting to be seen by a specialist. Plaintiff was subsequently examined by the Clinical Director on January 6, 2009. On January 21, 2009, plaintiff's counselor and Unit Manager responded to his Informal Resolution Attempt, stating that his health care needs were currently being met and that there was no need for a consultation by an ophthalmologist at that time. See Exhibit 2 to Complaint [Doc. #2-2, pages 2-3]. Plaintiff's Unit Manager

2

also advised him in this response that if there were any need for further consultation, it could be conducted through regular Sick Call or that plaintiff could discuss the matter with the Health Services Administrator. *Id.*

Not being satisfied with the response to his Informal Resolution Attempt, on January 29, 2009, plaintiff submitted an Inmate Request to the Warden, recounting his medical problems and again requesting to be evaluated by an ophthalmologist. On February 17, 2009, the Warden denied plaintiff's request for the following reasons:

> This is in response to your Administrative Remedy #524658-F1, in which you state you are experiencing problems with your left eye, more specifically, black lines that have been increasing by the day, following an injury from a soccer ball in September 2008. You are requesting to be seen by an Ophthalmologist.
>
> In response to your request your medical record was reviewed and revealed that of the nine visits you have made to Health Services since September 2008, your only complaint of visual problems came on October 3, 2008. In response to your complaint you were evaluated and found to have no serious eye problems pending. The exam showed that you had clear fundi, and no hemorrhaging or retinal detachments noted. However, since your visual acuity was greater than 20/40, you were referred to an Optometrist for further evaluation. On December 3, 2008, you were evaluated and in response to your continued complaint of "black floating things off and on for three months" and "stars, once in a while," the Optometrist's evaluation showed that you had neither tears, nor retinal detachments in either eye. You were reported to have vitreous floaters which is not uncommon. His only recommendation was to prescribe glasses in order to treat your refractive error. A pair of

3

corrective eyeglasses have [sic] been ordered for you.   No further clinical evaluation by another eye specialist is warranted.

See Exhibit 3 to Complaint [Doc. #2-3, page 3].

Plaintiff exhausted his administrative remedies concerning his request for an evaluation by an ophthalmologist, and then filed the present action, maintaining his request to be evaluated by an ophthalmologist.

## DISCUSSION/ANALYSIS

### A.    Standard for Summary Judgment

In *Menuskin v. Williams*, 145 F.3d 755 (6th Cir. 1998), the Sixth Circuit reiterated the standard to be employed when considering a motion for summary judgment, as follows:

> . . . Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).   In applying this standard, we view the evidence so that all justifiable inferences are drawn in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

*Menuskin*, 145 F.3d at 761. *See also Street v. J. C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989).

Based on the facts of this case, *Bivens* Defendant Warden Holland is entitled to summary judgment because there is no genuine issue of material fact, and the

4

movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial burden of specifying the basis upon which he contends judgment should be granted, and of identifying the portion of the record which, in his opinion, demonstrates the absence of a genuine issue of material fact. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976), the Supreme Court held that deliberate indifference to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. *See also, Hicks v. Frey*, 992 F.2d 1450, 1454-55 (6th Cir. 1993). Under the Eighth Amendment line of cases, an inmate must demonstrate both an objective component, that his or her medical needs are serious, and a subjective component, that prison officials were deliberately indifferent to the inmate's serious medical needs. The Estelle Court held that mere negligence does not violate the Eighth Amendment. In defining the subjective component of "deliberate indifference," the Supreme Court explained that while an "express intent to inflict unnecessary pain is not required . . . [i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the cruel and unusual punishment clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Deliberate indifference may be ". . . manifested by prison doctors in their response to a prisoner's needs or by prison guards in intentionally denying or

5

delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104.

The Supreme Court in *Farmer v. Brennan*, 114 U.S. 825, 837 (1994), further clarified the objective and subjective elements of an Eighth Amendment violation, which Plaintiff presumably alleges herein. The objective element is met by the presence of some excessive harm or risk to an inmate. *Id.* The subjective element of an Eighth Amendment claim is established by showing a prison official exposed an inmate to the unreasonable or substantial risk with "deliberate indifference," or with a culpable state of mind. *Farmer*, 511 U.S. at 837. More specifically, the *Farmer* Court determined that a prison official cannot be liable under the Eighth Amendment unless the official knows of and disregards the excessive risk to inmate health or safety. Id.; *See also, Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (to meet the subjective element of an Eighth Amendment violation, a prison official must have a sufficiently culpable mind similar to criminal law "recklessness"). In other words, the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.; Talal v. White*, 403 F.3d 423, 427 (6th Cir. 2005); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001), *cert. denied*, 537 U.S. 817 (2002); *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006).

6

**B.**    **No evidence of deliberate indifference**

In applying the Eighth Amendment standard to this case sub judice, Plaintiff

must show he had a serious medical need, in this case his left eye condition, and that

Warden Holland knew but consciously chose to ignore this serious medical problem.

However, as discussed below, in Warden Holland's situation, the evidence shows

there was no violation of Plaintiff's constitutional rights because neither element of

an Eighth Amendment violation exists in this case.

The objective component in this case pertains to Plaintiff's alleged left eye

vision problems. [Complaint, pp.1-6].    The objective element of an Eighth

Amendment claim is not met because Plaintiff never had any serious medical

problems with his left eye.  Plaintiff's left eye was examined repeatedly by FCI-

Ashland clinicians, including Clinical Director Dr. Kenneth Gomez, and a contract

optometrist, none of whom found any significant problems with Plaintiff's left eye.

Declaration of Kenneth Gomez, M.D., ¶¶3-9, Exhibit B to Defendant's Memorandum

In Support of Motion For Summary Judgment [D.E. #11].  On the contrary, these

practitioners determined that Plaintiff had nothing more than harmless vitreous

floaters in the left eye which were the cause of his claims of seeing black spots or

lines. *Id*.  Vitreous floaters are harmless clumps of gel which float on the surface of

the eye and are at worst a nuisance which require no medical treatment. *Id.*, at ¶¶6-7.

7

Assuming *arguendo* that Plaintiff had met the objective element of an Eighth Amendment claim, the facts nevertheless show that the subjective element was not present for the following reasons. First, Defendant Holland was not even employed at FCI-Ashland as Warden or in any other capacity during the time period at issue (September of 2008 through February of 2009), so he had no knowledge about Plaintiff or his medical complaints.[1] Declaration of J. C. Holland, ¶¶1-2, Exhibit C to Defendant's Memorandum In Support of Motion For Summary Judgment [D.E. #11].

Second, to the extent Plaintiff complains of Eighth Amendment violations during Warden Holland's tenure at FCI-Ashland, Holland is the Warden or Chief Executive Officer of FCI-Ashland and supervises multiple departments within the institution, including the Health Services Department responsible for inmates' care. *Id.*, ¶3. Defendant Holland delegates all responsibilities for the medical and dental care of all inmate patients, including Plaintiff, to his Health Services staff. *Id.* Warden Holland had no knowledge of Plaintiff's complaints and never had any direct involvement with medical decisions regarding the care of Plaintiff's eye.

---

[1] Prior to January 2010, J.C. Holland was employed as the Associate Warden at the Federal Correctional Complex in Florence, Colorado.

8

In a *Bivens* action, a defendant must have personal involvement in the alleged constitutional violations; if not, the *Bivens* claim must be dismissed against that defendant. *See Monell v. N.Y. City Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). When a complaint is filed against a federal official in his individual capacity, liability only lies where it can be affirmatively shown that the official personally acted in depriving the plaintiff of his constitutional rights. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).

## C.    No liability under the doctrine of *respondeat superior*

The Sixth Circuit has held that the liability of a government supervisor must be based upon more than *respondeat superior*, or the right to control employees. In *Shehee v. Luttrell*, 199 F.3d 295,300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000), the Sixth Circuit held that *Bivens* defendants, including a Regional Director, Deputy Regional Director, Warden, and National Remedy Coordinator who had mere knowledge of unconstitutional conduct, but did not engage in the conduct, was insufficient to create supervisory liability under a *respondeat superior* theory.

9

*Respondeat superior* liability requires a higher degree of personal involvement. In order to establish that a supervisor is liable for unconstitutional actions of his subordinates, a plaintiff must show that a duty to supervise exists and that the supervisor at least implicitly authorized, approved of or knowingly acquiesced in the unconstitutional conduct. *Hays v. Jefferson County*, 668 F.2d 869 (6th Cir. 1982), *cert. denied*, 459 U.S. 833 (1982); *Leach v. Shelby County Sheriff*, 891 F.2d 1241 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990).

It appears that plaintiff named Warden Holland as a defendant in this action because of his position as custodian of inmates at FCI-Ashland.  However, in his Complaint,  Plaintiff does not allege that Holland personally acted to deprive him of his Eighth Amendment rights, nor does he claim that Holland authorized subordinates to engage in unconstitutional conduct. [Complaint, pp.1-5].  Since the doctrine of *respondeat superior* is not applicable in this case, and since both the objective and subjective components of deliberate indifference under the Eighth Amendment are not present, Plaintiff's claims against Defendant Holland must be dismissed.

10

**D.    Appropriate medical care in accordance with prevailing medical standards**

As seen from the factual background of this case, the medical care provided to Plaintiff in response to his left eye complaints was completely appropriate and consistent with the medical standards of a reasonable practitioner. Declaration of Kenneth Gomez, M.D., ¶¶1-9, Exhibit B to Defendant's Memorandum In Support of Motion For Summary Judgment [D.E. #11]; Plaintiff's Medical Records, Exhibit D. Plaintiff first presented with his left eye complaints on October 1, 2008, and he was scheduled to be examined by a clinician on October 3, 2008, during sick call at FCI-Ashland. Declaration of Kenneth Gomez, M.D., ¶2, Exhibit B to Defendant's Memorandum In Support of Motion For Summary Judgment [D.E. #11]; Plaintiff's Medical Records, Exhibit D. On October 3, 2008, both of Plaintiff's eyes were evaluated by his Primary Care Physician ("PCP") at FCI-Ashland, and the exam yielded normal findings, with no evidence of any trauma or infection in the eyes. Declaration of Kenneth Gomez, M.D., ¶3, Exhibit B to Defendant's Memorandum In Support of Motion For Summary Judgment [D.E. #11]; Plaintiff's Medical Records,

11

Exhibit D.  Plaintiff was re-evaluated by his PCP at FCI-Ashland on November 12,

2008, and again the exam yielded normal findings.  <u>Declaration of Kenneth Gomez,</u>

<u>M.D.</u>, ¶4, Exhibit B to Defendant's <u>Memorandum In Support of Motion For Summary</u>

<u>Judgment</u> [D.E. #11]; <u>Plaintiff's Medical Records</u>, Exhibit D.  However, due to his

repeated complaints about vision problems in his left eye, FCI-Ashland medical staff

took the extra step by approving and scheduling Plaintiff to be examined by a contract

optometrist employed outside the prison. *Id*.

The optometrist found no abnormalities such as retinal detachment or tears.

<u>Declaration of Kenneth Gomez, M.D.</u>, ¶5, Exhibit B to Defendant's <u>Memorandum In</u>

<u>Support of Motion For Summary Judgment</u> [D.E. #11]; <u>Plaintiff's Medical Records</u>,

Exhibit D.  Instead, the optometrist corroborated the prison medical personnel's

findings and diagnosed Plaintiff as having harmless floaters in his left eye. *Id*. The

optometrist recommended Plaintiff obtain eye glasses to correct his vision, since

floaters may be related to this nearsightedness, and Plaintiff admitted he had "lost"

his eyeglasses seven years earlier but had not replaced them. *Id*. Significantly, the

12

optometrist found no need to schedule any further evaluations for Plaintiff, because

he found no abnormalities other than harmless floaters in Plaintiff's eye. *Id.*

Plaintiff was seen again in the FCI-Ashland medical clinic on January 16,

2009, and the eye exam again yielded normal findings.  Declaration of Kenneth

Gomez, M.D., ¶8, Exhibit B to Defendant's Memorandum In Support of Motion For

Summary Judgment [D.E. #11].  The same normal findings also occurred when

Plaintiff was examined in the clinic on April 19, 2009, and April 24, 2009. *Id.* FCI-

Ashland Clinical Director Dr. Gomez personally examined Plaintiff's eye at the

Chronic Care Clinic on May 4, 2009, and again there were no abnormalities found in

Plaintiff's left eye except for harmless floaters. *Id.*, ¶9.

Plaintiff's medical records reflect that he did not complain of any left eye

vision problems after this May 4, 2009, visit with Dr. Gomez.  Declaration of

Kenneth Gomez, M.D., ¶9, Exhibit B to Defendant's Memorandum In Support of

Motion For Summary Judgment [D.E. #11]; Plaintiff's Medical Records, Exhibit D.

Since June 10, 2009, until August 12, 2011, Plaintiff has been seen on or about

13

eighteen different times at FCI-Ashland for assorted sick call requests and follow-ups, right eye trauma, and Chronic Care clinics, but he has not complained of any left eye problems during any of these visits. *Id.*

In summary, the care of Plaintiff's left eye condition was proper and staff responded appropriately to all of his complaints. Declaration of Kenneth Gomez, M.D., ¶¶1-9, Exhibit B to Defendant's Memorandum In Support of Motion For Summary Judgment [D.E. #11]; Plaintiff's Medical Records, Exhibit D. Plaintiff's health care treatment demonstrates that elements of an Eighth Amendment violation do not exist in this case. Defendant J.C. Holland, Warden at FCI-Ashland is entitled to summary judgment, pursuant to Rule 56(c).[2]

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

---

[2] Based on the factual background of this case and Plaintiff's medical care, as documented in his medical records, it also appears that Defendant Holland would be entitled to the defense of qualified immunity under *Pearson v. Callahan,* 129 S.Ct. 808 (2009); however, since the Court concludes that Defendant Holland is entitled to summary judgment on Plaintiff's *Bivens* claim because that claim is without merit, there is no need to address the qualified immunity issue at length.

14

(1)     Defendant's Motion for Summary Judgment [R. 10] is **GRANTED**;

(2)     All claims having been resolved, this action is **DISMISSED** and **STRICKEN** from the docket.

(3)     Judgment in favor of the named Defendant, J.C. Holland, Warden, shall be entered contemporaneously with this Memorandum Opinion and Order.

This 23rd day of February, 2012.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge